Burnham v. Dunn.

BURNHAM *v.* DUNN & TRUSTEES.

A compromise of controversies is a good consideration for the surrender of notes and the discharge of indebtedness previously existing.

Where the person summoned as trustee of a debtor expressly denies all liability, and there is no indebtedness which the debtor could enforce; in the absence of any fraud shown by the disclosure, or found by a jury, there is no ground for charging him as trustee.

A disclosure which positively denies all indebtedness and all liability, is to be taken as true, although it may appear that some of its statements are founded upon information only.

TRUSTEES' DISCLOSURE. The disclosure denied expressly and unequivocally all indebtedness and all liability of the White Mountain Lumber Company, the alleged trustees, to or for the

principal defendant, at the time of the service of the writ or since. It appeared from it, in substance, that on the 1st day of August, 1854, the principal defendant conveyed to the company, then recently chartered and only just organized, real estate estimated at $300,000, and received his pay therefor in that amount of capital stock of the company at par, and that he at the same time conveyed to the company personal property estimated at $50,000, for which he received the promissory notes of the company, payable in six months from date, without interest. Of these notes $6,000 worth were immediately endorsed and transferred by the principal defendant, to raise money at various banks. In November, 1854, before the notes transferred had become due, and before the principal defendant had negotiated the remaining $44,000 worth of notes, some of the parties to whom he had sold portions of the $300,000 worth of stock, issued to him in payment for the real estate, and who had thereby become members of the company, complained that they had been imposed upon and defrauded; that they understood when they purchased stock that both the real and personal estate of the principal defendant had been conveyed by him to the company for $300,000, and refused to stand to the purchases of stock they had made, unless both the real and personal estate were included for that sum.

Thereupon, to save trouble and settle the controversy, the principal defendant agreed to put the whole property, real and personal, at the price of $300,000, gave up to the company the $44,000 worth of unnegotiated notes, and agreed to pay and subsequently did pay the notes for $6,000 which had been previously negotiated, so that the whole matter stood between the parties precisely as if the original trade had been, what the purchasers of stock understood it to be, that the whole price of the real and personal estate conveyed was the $300,000 worth of stock originally issued to the principal defendant for the real estate alone. This arrangement was made and completed between the parties in November, 1854, and was mutually satisfactory. The whole $300,000 worth of stock had been issued

to the principal defendant before that time. The value of the real or personal estate conveyed to the corporation did not appear from the disclosure. The disclosure was made by the treasurer of the company, and the last interrogatory proposed to him and the answer thereto were as follows :

" *Thirty-fourth Interrogatory.* State whether you personally know, of your own knowledge, that the parties who had purchased stock of said Dunn would not stand to the purchases they had made, unless he would give up his claim for $50,000 against said company, or whether you have heard that that was the case from Mr. Hartshorn and others ?

" *Answer.* I have heard one man, a Mr. Granville Stevens, who had purchased one hundred shares, say so. I have heard Mr. Dunn and Mr. Hobart say so. Stevens said he was deceived in it. This is all the personal knowledge I have about it."

*Carpenter,* (with whom was *C. R. Morrison,*) for the plaintiffs.

We contend that the notes of the trustee to Dunn for $50,000 were delivered over to the trustee without consideration, and that the transaction is consequently fraudulent and void as against Dunn's creditors, and the trustees chargeable for that amount.

The only pretence of a consideration for the agreement by which Dunn surrendered the trustees' notes, is that stated in the answer to the fourth interrogatory, to wit : " Mr. Dunn had sold stock to parties who understood that the personal property was included in the $300,000 purchase, and to save trouble on that account he agreed to put it all in at $300,000, and did so ; and unless it was so included they would not stand to the purchases of stock which they had made."

We say then —

1. If the facts so stated disclose a sufficient consideration to support a promise by Dunn to those parties, yet they disclose none moving from the company to Dunn. The company received $50,000 worth of Dunn's property, for which they have never paid him nor any one else a single farthing.

Burnham v. Dunn.

2. But there was upon the facts stated no consideration, as between Dunn and the parties themselves. They had no claim upon nor cause of action against Dunn ; for it nowhere appears, and in fact it is not pretended, that Dunn himself had misrepresented the affairs of the corporation to these parties, that they so "*understood*" from him. The "trouble" which he escaped by paying $50,000, was all ideal, and existed only in his own imagination. *Cabot* v. *Hoskins*, 3 Pick. 83 ; *Wade* v. *Simeon*, 2 M. G. & Scott 548 ; *Warden* v. *Tucker*, 7 Mass. 449 ; *Freeman* v. *Boynton*, do. 488 ; *Haynes* v. *Thom*, 8 Foster 386 ; *May* v. *Coffin*, 4 Mass. 347 ; *Farrington* v. *Brown*, 7 N. H. 271 ; *Bank* v. *Brown*, 12 do. 325 ; *Greenleaf* v. *Perrin*, 8 N. H. 273 ; *Langley* v. *Berry*, 14 do. 82.

3. But there is no evidence, competent for the court to consider, that the facts were as stated by the trustee in his answer to the fourth interrogatory, and the case must be considered as if that answer were out of the case. We call the attention of the court to the answer to the thirty-fourth interrogatory, and cite *Giddings* v. *Coleman*, 12 N. H. 153.

4. The surrender by Dunn to the trustee of the notes for $50,000, without consideration, was a fraud upon his creditors, and the trustee must be charged for that amount. *Ripley* v. *Severance*, 6 Pick. 474 ; *Aldrich* v. *Brook*, 5 Foster 241 ; *Hutchins* v. *Sprague*, 4 N. H. 469 ; *Boardman* v. *Cushing*, 12 do. 113 ; *Giddings* v. *Coleman*, 12 do. 157 ; *French* v. *Lovejoy*, 12 do. 458 ; *Wiggin* v. *Lewis*, 19 do. 548 ; Cushing's Trustee Process, (83) secs. 199–202 ; do. do., secs. 28 and 34–46 ; *Burlingame* v. *Bell*, 16 Mass. 318–320 ; *Devoll* v. *Brownell*, 5 Pick. 448 ; Comp. Stat. 532, sec. 34.

*Burns & Fletcher*, for the trustees.

FOWLER, J. It is undoubtedly true, that trustees may be charged upon the ground of fraud, where they deny all liability, and there is no indebtedness which the principal defendants could enforce against them. But it is entirely clear, upon the

authorities cited by the plaintiff, that this can be done only where there is an actual indebtedness and an actual fraud, as against creditors. *Aldrich* v. *Brooks*, 5 Foster 241, and other authorities, cited by the plaintiff in his argument.

In the case before us, if it were shown by the disclosure, or had been found by the verdict of a jury, that the arrangement made by the principal defendant and the trustees, in November, 1854, was an actual fraud, as against creditors; that it was attended with a secret trust, or entered into for the purpose or with the intent to defeat, hinder or delay creditors, by covering up the amount of the value of the personal property in the hands of the trustees, or otherwise, there can be no doubt the trustees might be chargeable on the original contract. But nothing of that kind appears from the disclosure, or has been found by a jury. The disclosure states, in substance, that upon a portion of the stockholders complaining that they had been deceived and imposed upon; that they understood — whether from the representations of the principal defendant or otherwise, does not appear — when they purchased their stock, that the whole personal as well as real estate had been included in the price of $300,000, and threatening to back out from their position as stockholders, the principal defendant came forward and changed the contract to conform to their understanding of it. There was in effect a compromise between the parties. In order to satisfy the stockholders and adjust a controversy in which he was deeply interested, and in which his character and reputation were involved, the principal defendant gave up the notes for $50,000, and discharged the indebtedness of the company to that amount. There may have been fraud in this arrangement, or there may not. The disclosure does not show it, and it is not to be presumed. As between the parties, an adjustment of serious difficulties, a compromise of the controversy in relation to the sale and purchase of stock, was a good consideration for the surrender of the notes, and the contract must stand until impeached.

So too in regard to the claim that the trustees have in their

possession $50,000 worth of personal property that once belonged to the principal defendant without having paid any consideration for it. If this were so, and it clearly appeared from the disclosure, even if the principal defendant had so relinquished his title to it that he himself could recover no compensation for it, the trustees might be charged, as there must have been some fraudulent collusion between the parties in covering up such an amount of property in the hands of the trustees. But the disclosure furnishes no evidence to sustain the plaintiff's allegation. The value of either the real or personal estate is not stated. The $300,000 finally agreed upon as the price of both, may have been the actual and fair value of the whole. There is no evidence of any collusion between the parties. The presumption, from all the circumstances set forth in the disclosure, is strongly against it.

It does not appear with whom the principal defendant made the original arrangement for the sale of the real and personal estate to the company for $350,000. But, if we are permitted to look at the charter of the corporation, it is quite manifest there must have been something wrong in the character or terms of that arrangement. By the charter, the capital stock was limited to $300,000, and the company could not hold real and personal estate to a greater amount than their capital stock. Laws of 1854, chap. 1615. The whole amount of the capital stock of the company was issued to the principal defendant in payment for the real estate, and then an indebtedness of $50,000 incurred for the personal property, in express violation of the provisions of the charter. It is evident that the purchasers of stock might have had good cause to complain that they had been deceived and imposed upon, when they found the company indebted for $50,000 worth of property which they could not legally hold.

It is sufficient for the decision of the question before us, that no fraudulent covering up of property in the hands of the trustees, no collusion whatever between the parties, is shown by the disclosure. Were we obliged to decide upon the probabilities of the case, we think it would be a very natural inference from the

facts stated in the disclosure, that the actual value of all the property, real and personal, conveyed by the principal defendant to the trustees, did not exceed the sum of $300,000 ; so that in truth and in fact, there was no surrendering up of property, no relinquishment of actual *bona fide* indebtedness, by the principal defendant, when the terms of the original contract were changed. But we are not called upon to determine this question. It is sufficient that the change was made for a good consideration, in the absence of any evidence of fraud.

But it is insisted that the disclosure is to be disregarded, and the trustees charged upon the original contract, because it appears that some of the statements contained in the disclosure rest upon the information of the witness, and are not matters of personal knowledge. It is quite difficult to conceive what better knowledge the witness could have had of the motives to a transaction between other parties, than the statements of both of them. Besides, the disclosure states positively the fact of the arrangement entered into, by which the original contract was changed and the notes for $50,000 given up and cancelled, and the reasons for it, and unequivocally denies all indebtedness and liability of the trustees. That the reasons why the change was made were derived from the statements of the parties thereto, does not seem to us at all material. The force of the positive averment, that it was made in good faith as an adjustment of controversies, and that no indebtedness existed at the time of the service of the trustee writ, is not thereby affected.

Upon the disclosure,

*The trustees must be discharged.*